IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DIONISIO SOMERVILLE,

                                            Civil Action No.
                        Plaintiff,          9:11-CV-0556 (MAD/DEP)

        v.

J. SAUNDERS, *et al.*,

                        Defendants.

_____

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:                        <u>OF COUNSEL</u>:

DIONISIO SOMERVILLE, *Pro Se*
93-A-1106
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN               KEITH A. MUSE, ESQ.
Office of the Attorney General          Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Dionisio Somerville, a New York State prison inmate, has commenced this action, pursuant to 42 U.S.C. § 1983, against several corrections personnel stationed at the prison facility in which he was confined at the relevant times, alleging deprivation of his civil rights. In his complaint, plaintiff alleges that he was subjected to an unprovoked attack by the defendants, violating his rights under the Eighth Amendment to the United States Constitution, and causing him to sustain injuries requiring medical treatment.

Currently pending before the court is plaintiff's motion seeking the entry of summary judgment, finding as a matter of law that defendants violated his Eighth Amendment rights through the use of excessive force. Because plaintiff's allegations are sharply contested by defendants, and the record now before the court reflects the existence of disputed issues of material fact concerning the extent of force applied by defendants and whether it was justified under the circumstances, I recommend that plaintiff's motion be denied.

## I. BACKGROUND[1]

Plaintiff is a prison inmate currently held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Complaint (Dkt. No. 1); Muse Decl. (Dkt. No. 53-1) at ¶ 2; Muse Decl. Exh. 1 (Dkt. No. 53-1) at 4-5. While he is currently confined elsewhere, at the times relevant to this action, plaintiff was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York. Complaint (Dkt. No. 1) at 1-2.

On July 11, 2010, plaintiff participated in a DOCCS family reunion program, through which he was permitted to visit with family members in a trailer located at Great Meadow. Complaint (Dkt. No. 1) at 3. Following the visit, he was asked by Great Meadow corrections officers to provide a urine sample for drug testing. *Id*. at 3-4. A dispute arose between the officers and plaintiff after he was unable to provide the requested specimen. *Id.* It is at this point that the parties' accounts of the relevant events diverge.

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of defendants, the non-moving parties. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

According to the plaintiff, after being taken to a bathroom in the auditorium area of the facility, he was physically accosted by defendants J. Saunders, A. White, and Bezio, who struck him initially in the face and nose. Complaint (Dkt. No. 1) at 4. Defendant Saunders then hit Somerville on the forehead and back top area of his head, and defendant White "delivered two karate chops" to plaintiff's neck and head, rendering him unconscious. *Id*. Plaintiff awoke to defendant Bezio stomping on his lower and upper back, while defendant Mulligan continued to punch him with a closed fist, causing him to suffer a one-inch gash over his left eye that required three sutures to close. *Id.* at 4-5.

Despite having been subdued, plaintiff continued to be assaulted by the corrections officers. Complaint (Dkt. No. 1) at 5. Plaintiff alleges defendant Lawrence kicked him twice in the back of the head, and defendant M. Sage punched his left ear approximately ten times causing contusions and abrasions. *Id.* As the incident continued, defendants M. Kuhl and Vandenburg each kicked the plaintiff multiple times on the left side of his hip, and defendant Cross kicked him in the right knee. *Id.* Defendant Saunders and Mulligan lifted plaintiff to his feet, and slammed him down between two

4

separate walls, following which defendant Saunders continued to punch plaintiff in his left eye and the back of his head. *Id*. Plaintiff was then placed in mechanical restraints by defendant Mulligan, and escorted to the infirmary. *Id*. During the escort, defendants Mulligan and Lawrence attempted to break plaintiff's wrist, causing deep lacerations and abrasions to both wrists. *Id*. Plaintiff was subsequently treated at the facility's infirmary, where his injuries were photographed. *Id.* at 5-6.

B.    Defendants' Version

According to the defendants, after being unable to produce a urine sample at the trailer, plaintiff was escorted to the Great Meadows auditorium by defendant Saunders, where he was again requested to provide a urine sample. Saunders Decl. Exh. 2 (Dkt. No. 53-8) at 7. After plaintiff was informed by defendant Saunders that he would have to produce the required sample within three hours or else face a misbehavior report, plaintiff uttered a series of expletives and stood up. *Id.* at 7. After being ordered to sit back down, Somerville became loud and aggressive and stepped forward toward defendant Saunders. *Id.* In an effort to defend himself from a perceived impending assault from plaintiff, defendant Saunders grabbed Somerville's shoulders "to force [him] back." *Id.* Plaintiff then struck defendant Saunders

on the left side of his face with a closed fist, and an altercation ensued that involved both individuals exchanging punches during the incident. *Id.*

Defendant Bezio, who was stationed near the auditorium, overheard the commotion and entered the auditorium to investigate. Bezio Decl. (Dkt. No. 53-2) ¶¶ 5-6. Upon arriving, she observed an inmate struggling on the ground with a fellow officer. *Id.* at ¶ 7. As other officers began responding to the auditorium, defendant Bezio sent out a radio call for assistance.[2] *Id.* at ¶¶ 8-9. When defendants White, Sage, and Kuhle arrived, they observed plaintiff violently struggling with defendant Saunders on the ground. White Decl. Exh. 1 (Dkt. No. 53-10) at 4; Sage Decl. Exh. 1 (Dkt. No. 53-7) at 4; Kuhle Decl. Exh. 1 (Dkt. No. 53-4) at 4. Those officers then assisted defendant Saunders in bringing plaintiff within their control. *Id.* Once plaintiff was secured through the use of mechanical restraints, he was escorted from the auditorium to the prison infirmary by defendants Mulligan, Cross, Vandenberg and Lawrence. Mulligan Decl. (Dkt. No. 53-6) ¶ 5; Vandenberg Decl. (Dkt. No. 53-9) ¶ 5; Lawrence Decl. (Dkt. No. 53-5) ¶ 5; Cross Decl. (Dkt. No. 53-3) ¶ 5. Each of those corrections officers involved in the escort deny using any force against

_____

[2]     Despite plaintiff's allegations to the contrary, defendant Bezio states in her declaration that she never had any contact with the plaintiff, nor did she ever exert any force against him during the course of the incident. Bezio Decl. (Dkt. No. 53-2) at ¶ 12.

the plaintiff. Mulligan Decl. (Dkt. No. 53-6) ¶ 11; Vandenberg Decl. (Dkt. No. 53-9) ¶ 11; Lawrence Decl. (Dkt. No. 53-5) ¶ 11; Cross Decl. (Dkt. No. 53-3) ¶ 11.

### C.   Events Following the Altercation

As a result of the incident, plaintiff was issued a misbehavior report, charging him with assaulting staff members and engaging in violent conduct. Muse Decl. Exh. 3 (Dkt. No. 53-1) at 10. Following a disciplinary hearing, plaintiff was found guilty of those charges, and was ordered to serve a nine-month period of disciplinary confinement in the facility's special housing unit, with a corresponding loss of packages, commissary, and telephone privileges, and a further recommendation that he lose six months of good time credits. Complaint (Dkt. No. 1) at 6. That determination was affirmed, first on appeal to the facility's superintendent on August 13, 2010, and later by Albert Pratt, the DOCCS Director of Inmate Disciplinary/Special Housing Unit Program, on November 4, 2010. *Id.* at 6-7.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on May 17, 2011. Dkt. No. 1. In his complaint, he asserts, *inter alia*, an Eighth Amendment excessive force claim against defendants J. Saunders, Bezio, A. White, Lawrence, M. Sage, M. Kuhl, Vandenberg, Cross, and Mulligan, all of whom are corrections officers employed by the DOCCS.[3] *Id.*

On November 26, 2012, following the close of discovery, plaintiff moved seeking the entry of summary judgment in his favor in connection with his excessive force claim. Dkt. No. 48. Defendants have since opposed plaintiff's motion, Dkt. No. 53, and plaintiff has filed a reply addressing defendants' opposition in further support of his motion, Dkt. No. 56. Plaintiff's motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

[3]        Plaintiff's complaint asserts a variety of other federal and state claims, many of which may not to be cognizable. He alleges, for example, that defendants violated 18 U.S.C. § 242, a criminal statute prohibiting the deprivation of rights under color of law. That section, however, does not provide a private right of action. *Livingston v. Singer*, No. 01-CV-6979, 2003 WL 22952739, at *3 (S.D.N.Y. Dec. 16, 2003); *Katz v. Molic*, No. 83-CV-2943, 1984 WL 1078, at *2 (S.D.N.Y. Oct. 23, 1984).
        Additionally, plaintiff's complaint also included a claim against Corrections Officer Vedder, based upon his alleged falsification of records concerning the incident. Complaint (Dkt. No. 1) at 7. That claim, however, was dismissed by order issued by District Judge Mae A. D'Agostino on September 1, 2003. Dkt. No. 5.

III.    DISCUSSION

    A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250

9

n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Analysis of Plaintiff's Excessive Force Claim

Plaintiff's excessive-force claim is grounded in the Eighth Amendment, which prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg*

*v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones*." Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319 (internal quotation marks omitted); *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson,* 503 U.S. at 7-8 and *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). To satisfy the subjective requirement in an excessive force case, the plaintiff must demonstrate that "the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (internal quotation marks omitted). This inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing

harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (internal quotation marks omitted), *accord*, *Blyden*, 186 F.3d at 262. The Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases – not "whether a certain quantum of injury was sustained." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam).

In this case, the parties do not dispute that a confrontation occurred between plaintiff and some of the corrections officers named as defendants, and that it evolved into a physical altercation causing the plaintiff and at least one corrections officer, defendant Saunders, to suffer injuries. Plaintiff maintains that the attack upon him was entirely unprovoked. Plf.'s Aff. (Dkt. No. 48-4) at ¶ 2. Defendants, on the other hand, portray plaintiff as the aggressor, and argue that any force utilized against him was only to the degree necessary to subdue him and restore discipline. *See*, *e.g.*, Saunders Decl. (Dkt. No. 53-8) at ¶ 6; Saunders Decl. Exh. 1 (Dkt. No. 53-8) at 7.

Central to the excessive force inquiry in this case is whether the force applied by defendants represented a good faith effort to maintain or restore discipline, or instead was exerted maliciously or sadistically for the purpose of causing harm. Because there is sharply conflicting record evidence regarding these disputes of material fact, the entry of summary judgment in favor of

either plaintiff of defendants is not appropriate. Accordingly, I recommend that plaintiff's motion for summary judgment be denied. *See Butler v. Hyde*, No. 08-CV-0299, 2009 WL 3164753, at *3 (N.D.N.Y. Sept. 29, 2009) (Kahn, J., *adopting report and recommendation by* Lowe, M.J.) (denying the plaintiff's motion for summary judgment where the defendant's version of events giving rise to the use of force "squarely contradict[]" the plaintiff's, giving rise to "a triable issue of fact"); *Amaker v. Goord*, No. 03-CV-1003, 2008 WL 2732699, at *2 (N.D.N.Y. July 10, 2008) (Mordue, J.) (denying the defendants' motion for summary judgment, where the record evidence revealed a dispute of material fact as to whether the defendants struck the plaintiff with a ram, which, if true, may have permitted a rational factfinder to conclude that they used force maliciously).[4]

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff asserts an excessive force claim against several corrections officers as a result of an incident concededly involving the use of force. The parties' accounts of the incident and its genesis are distinctly at odds, and the question of whether the force was applied for the purpose of causing plaintiff harm, or instead for purpose of maintaining order, is sharply disputed. The

---

[4]     All unreported decisions have appended to this report for the convenience of the *pro se* plaintiff.

13

existence of these contested issues of material fact precludes the entry of summary judgment in plaintiff's favor. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for summary judgment (Dkt. No. 48) be DENIED, and that this matter be deemed trial ready.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      July 11, 2013
              Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2003 WL 22952739 (S.D.N.Y.)

(Cite as: 2003 WL 22952739 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Dennever LIVINGSTON, Plaintiff,
v.
Gino SINGER, Kenneth Shriber, and Kenneth Shriber,
Sparrow, Singer & Shriber, Defendants.
No. 01Civ.6979(GBD)(GWG).

Dec. 16, 2003.
*REPORT AND RECOMMENDATION*

GORENSTEIN, Magistrate J.

I. *BACKGROUND*

**\*1** In his amended complaint, *pro se* plaintiff Dennever Livingston asserts claims against the defendants under 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 18 U.S.C. § 242. *See* Amended Complaint, filed June 18, 2002 (Docket # 12) ("Am.Compl."). In brief, the amended complaint alleges that, after his 1997 federal conviction of various money laundering and drug trafficking charges, Livingston contacted defendant attorney Kenneth Schreiber of the law offices of defendant Sparrow, Singer & Schreiber, Esqs. in order to pursue a criminal appeal. *Id.* at 2–3.[FN1] Schreiber referred him to defendant attorney Gino Singer. *Id.* at 3.[FN2] Livingston alleges that he retained Singer and paid him $50,000 to represent him in his appeal but that Singer failed to file appellate briefs and to maintain contact with him. *Id.* at 3–4. Subsequently, Livingston secured alternate counsel and perfected his appeal. *Id.* at 3. Ultimately, Livingston's conviction was vacated in part, though his 30–year prison sentence was affirmed in full. *See United States v. Stewart,* 256 F.3d 231, 241–54, 257 (4th Cir.2001), *cert. denied,* 535 U.S. 977 (2002).

> FN1. The amended complaint incorrectly spells Schreiber as "Shriber ." *See* Affidavit of Kenneth J. Schreiber, dated November 27, 2002 ("Schreiber Aff.") (reproduced in Notice of Motion, filed December 10, 2002 (Docket # 26)

("Notice of Motion")), at 4 n. 2.

> FN2. Singer is not at Schreiber's law firm and is unrelated to the "Singer" in the name of that firm. *See* Schreiber Aff. at 1 n. 1; Affidavit of Gino Josh Singer, dated December 3, 2002 ("Singer Aff.") (reproduced in Notice of Motion), at 1 n. 1.

The complaint essentially seeks money damages for the defendants' alleged failure to provide adequate legal services. Defendants have now moved for summary judgment arguing that the federal claims must be dismissed and that the Court lacks jurisdiction over the complaint to the extent that it could be construed as attempting to raise a state law contract claim on the basis of diversity jurisdiction. For the reasons below, the defendants' motion should be granted.

II. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A material issue is a "dispute[ ] over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, " '[a] reasonably disputed, legally essential issue is both genuine and material' " and precludes a finding of summary judgment. *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22952739 (S.D.N.Y.)

(Cite as: 2003 WL 22952739 (S.D.N.Y.))

and draw all factual inferences in favor of the nonmoving party. *See, e.g., Savino v. City of New York,* 331 F.3d 63, 71 (2d Cir.2003) (citing *Anderson,* 477 U.S. at 255); *McPherson,* 174 F.3d at 280. Nonetheless, "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)).

**\*2** In this case, the defendants properly served a notice on Livingston, as a *pro se* litigant, warning him of the consequences of any failure to oppose their motion, as required by Local Civil Rule 56.2. *See* Notice to *Pro Se* Litigant Opposing Summary Judgment, filed December 10, 2002 (Docket # 25). Livingston has submitted papers in opposition to the defendants' motion. *See* Motion in Opposition to Summary Judgement [sic], filed March 10, 2003 (Docket # 32) ("Pl.Opp.").

B. *The Federal Claims*

To state a viable claim under 42 U.S.C. § 1983, Livingston must show that the defendants acted "under color of" a state "statute, ordinance, regulation, custom, or usage." Absent special circumstances suggesting a concert of action or conspiracy between a private individual and a state official, *see Tower v. Glover,* 467 U.S. 914, 923 (1984); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970); *Fries v. Barnes,* 618 F.2d 988, 990–91 (2d Cir.1980), private parties are not generally liable under section 1983. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999); *Rendell–Baker v. Kohn,* 457 U.S. 830, 838–43 (1982); *Flagg Bros. v. Brooks,* 436 U.S. 149, 155–57 (1978); *Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir.1996). Here, even giving his submissions a liberal construction, *see, e.g., Haines v. Kerner,* 404 U.S. 519, 520–21 (1972) (per curiam), Livingston does not allege nor is there any factual basis for claiming that defendants took any action under color of state law. In representing Livingston, Singer was engaged in purely private conduct. There is no suggestion of any state involvement necessary to transform his private acts into state action. While Livingston alleges that defendants "are all officers of the Court and as such acted under the color of law," Pl. Opp. ¶ 12, it is well-established that private attorneys, despite

their status as officers of the court, do not act under color of state law for purposes of section 1983. *See, e.g., Polk County v. Dodson,* 454 U.S. 312, 320–325 (1981); *Greene v. Berger & Montague, P.C.,* 1998 WL 99574, at \*3 (S.D.N.Y. Mar. 5, 1998); *Srubar v. Rudd, Rosenberg, Mitofsky & Hollender,* 875 F.Supp. 155, 163 (S.D.N.Y.1994), *aff'd,* 71 F.3d 406 (2d Cir.1995). Therefore, Livingston's claim under section 1983 must be dismissed.

Livingston's civil rights conspiracy claim under 42 U.S.C. § 1985 is also devoid of merit. Although it is not clear from his submissions, it would appear that Livingston's claim is under the third clause of section 1985. To prevail on a claim under section 1985(3), a plaintiff must demonstrate that defendants "(1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States." *N.Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1358 (2d Cir.1989) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)), *cert. denied,* 495 U.S. 947 (1990). While section 1985(3), unlike section 1983, encompasses private conspiracies, *see, e.g., Griffin,* 403 U.S. at 101, 104, a plaintiff must nevertheless show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," *id.* at 102; *accord Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999).

**\*3** Here, Livingston has not alleged any "conspiracy" to deprive him of a protected right. The only involvement of Schreiber in the acts complained of was his referral of Singer. *See* Am. Compl. at 3. There is no allegation that Schreiber had any part in any subsequent discussions between Livingston and Singer or in any way assisted Singer in his representation of Livingston. *See also* Schreiber Aff. at 3 ("I know absolutely nothing of that which transpired between [Livingston] and [Singer] after I provided members of [Livingston's] family and/or his friends with [Singer's] name."). Thus, without showing the involvement of at least two participants, Livingston has not shown there was any "conspiracy" under section 1985(3). Moreover, to the extent Livingston alleges that

Not Reported in F.Supp.2d, 2003 WL 22952739 (S.D.N.Y.)

(Cite as: 2003 WL 22952739 (S.D.N.Y.))

the defendants conspired to commit "hate crimes" against him because he could speak only a limited amount of English, Am. Compl. at 4, this sort of conclusory allegation is also insufficient to state a claim under section 1985(3). *See, e.g., Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir.1999)* ("The mere assertion of racial motivation ... is not sufficient to state a conspiracy claim [absent] facts sufficient to support a conclusion of race-based animus." (citing *Graham,* 89 F.3d at 82)).

Finally, Livingston's claim under 18 U.S.C. § 242 is also without merit because the statute is criminal in nature and provides no civil or private right of action. *See, e.g., Dugar v. Coughlin,* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985); *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981); *Sauls v. Bristol–Myers Co.,* 462 F.Supp. 887, 889 (S.D.N.Y.1978); *Williams v. Halperin,* 360 F.Supp. 554, 556 (S.D.N.Y.1973).

In sum, Livingston has not alleged any claim under federal law and therefore all of these claims must be dismissed.

C. *Diversity Jurisdiction*

Livingston does not specifically state that he seeks relief under a state law breach of contract theory. But as his papers liberally construed appear to state such a claim, the Court will assume he intended to include it. Livingston does adequately allege that Singer failed to fulfill his contract to provide legal services. His papers can also be liberally construed as alleging that Singer is a citizen of the State of New York and that Livingston is a citizen of the State of Georgia and/or is a "subject[ ] of a foreign state," 28 U.S.C. § 1332(a)(2). *See generally* Am. Compl. at 1–2.

The missing element of Livingston's complaint is that the amount-in-controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a). Defendants have moved to dismiss on this basis. *See* Joint Memorandum of Law Submitted on Behalf of Defendants Gino Singer and Kenneth Shriber, filed December 10, 2002 (Docket # 27), at 13. Livingston, as the party asserting diversity jurisdiction, has the burden of establishing the existence of the jurisdictional amount-in-controversy. *See, e.g., Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 273 (2d

Cir.1994) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

**\*4** While Livingston's complaint alleges compensatory damages of $10 million and punitive damages of $10 million as against each defendant, Am. Compl. at 6, the Court is not bound by the amount claimed in his ad damnum clause if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount," *Ocean Ships, Inc. v. Stiles,* 315 F.3d 111, 115 (2d Cir.2002) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89 (1938)); *see Pirenne Python Schifferli Peter & Associes v. Wyndham Partners, L.P.,* 1995 WL 261512, at *2 (S.D.N.Y. May 3, 1995) (the "legal certainty" test is "clearly" met "when the terms of a contract limit the plaintiff's possible recovery" (citing 14A Charles A. Wright et al., *Federal Practice and Procedure* § 3702, at 48–50 (2d ed.1985))).

In determining the amount-in-controversy, interest and costs are excluded. 28 U.S.C. § 1332(b). Additionally, "[t]he Second Circuit has held that attorney's fees may be used to satisfy the amount in controversy only where they are recoverable as of right pursuant to statute or contract." *In re Ciprofloxacin Hydrochloride Antitrust Litig.,* 261 F.Supp.2d 740, 755 (E.D.N.Y.2001) (citing *Givens v. W.T. Grant Co.,* 457 F.2d 612, 614 (2d Cir.), *vacated on other grounds,* 409 U.S. 56 (1972)); *accord Maxons Restorations, Inc. v. Newman,* 2003 WL 22743023, at *4 (S.D.N.Y. Nov. 19, 2003).

Here, Livingston fails to allege facts to support a claim for damages in excess of the statutory amount. Beginning with compensatory damages, all that is left of the complaint following dismissal of the federal civil rights claims is a claim for breach of contract in the amount of $50,000—the amount of fees allegedly paid by Livingston to Singer. Livingston does not allege that he paid any monies to any other defendant. Nor does he allege any factual basis to support a claim for compensatory damages in excess of $50,000. Thus, the most Livingston could recover in compensatory damages is $50,000.

As for his claim for attorneys' fees, he has no statutory right to them for the alleged breach of contract; nor has he

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22952739 (S.D.N.Y.)

(Cite as: 2003 WL 22952739 (S.D.N.Y.))

suggested that the contract with Singer itself contained a fee-shifting provision. Thus, his unspecified claim for attorneys' fees cannot be included in calculating the amount-in-controversy.

Finally, punitive damages can be included in calculating the jurisdictional amount only if they are legally recoverable under applicable state law. *See, e.g., AFA Tours, Inc. v. Whitchurch,* 937 F.2d 82, 87 (2d Cir.1991); *Rosenberg v. GWV Travel, Inc.,* 480 F.Supp. 95, 97 (S.D.N.Y.1979). Under New York law, it is settled that where "punitive damages are premised upon a private breach of contract, even a breach committed wilfully and without justification does not warrant the imposition of punitive damages." *Keles v. Yale Univ.,* 889 F.Supp. 729, 735 (S.D.N.Y.1995) (citing *Halpin v. Prudential Ins. Co.,* 48 N.Y.2d 906, 907 (1979); *Cross v. Zyburo,* 185 A.D.2d 967, 968 (2d Dep't 1992); *JGS, Inc. v. Lifetime Cutlery Corp.,* 87 A.D.2d 810, 810 (2d Dep't 1982)), *aff'd,* 101 F.3d 108 (2d Cir.1996). Punitive damages may be permitted only if a plaintiff has demonstrated "a factual basis for inferring morally culpable conduct." *Id.; accord N.Y. Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 315–16 (1995) (punitive damages arising from a breach of contract are available "only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations" ' (citations omitted)); *see also Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 613 (1994) ("[A] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.").

**\*5** In his complaint, Livingston alleges that, after paying Singer $50,000, he spoke with Singer on three additional occasions and "had no further contact with him." Am. Compl. at 3. Thereafter, Livingston, members of his family, and a clerk from the Fourth Circuit allegedly attempted to contact Singer but to no avail. *Id.* Attached to his submissions are various letters written by Livingston and these other individuals to Singer. In one such letter, Livingston, apparently in response to a letter from Singer,

indicates that Singer was in the process of a divorce, that this "affected [Singer's] ability to concentrate effectively on paramount matters such as my appeal" and that Singer should have "properly communicate[d] this with the Court and I your Client." Letter from Livingston to Singer, dated March 14, 2000 (reproduced in Complaint, filed July 30, 2001 (Docket # 1)), at 1.

In the papers seeking summary judgment, Singer has submitted a lengthy affidavit in which he states that he did not in fact receive $50,000 and that he performed some services in pursuing the appeal but was discharged by Livingston before a brief could be filed because Livingston felt he should not have sought any extensions from the Fourth Circuit. Singer Aff. at 2 n. 3, 9–10. Livingston's response addresses none of these matters. Instead, he complains regarding the performance of the new attorney who handled his appeal, Pl. Opp. ¶ 8, and appears to concede that Singer visited him in Virginia while he was in prison, *id.* ¶ 10. Livingston does not otherwise controvert Singer's affidavit. Based on the evidence submitted as part of the summary judgment motion, Livingston's breach of contract claim does not meet New York's strict requirements for obtaining punitive damages on such a claim.

Because Livingston cannot meet the jurisdictional amount for diversity jurisdiction, the amended complaint must be dismissed. Obviously, Livingston is free to attempt to bring the breach of contract claim in state court.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment should be granted. The amended complaint should be dismissed without prejudice to refiling in a state court insofar as it raises a claim for breach of contract.

PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22952739 (S.D.N.Y.)

(Cite as: 2003 WL 22952739 (S.D.N.Y.))

to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable George B. Daniels, 40 Centre Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Daniels. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2003.

Livingston v. Singer
Not Reported in F.Supp.2d, 2003 WL 22952739 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1984 WL 1078 (S.D.N.Y.)

(Cite as: 1984 WL 1078 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court; S.D. New York.

WILLIAM KATZ, Plaintiff,
v.
ROBERT MOLIC; IRWIN STRUM; QUEENSBORO
SOCIETY FOR THE PREVENTION OF CRUELTY
TO CHILDREN; ROBERT ABRAMS; DANIEL
KURTZ; HORTENSE R. LANDAU; NEW YORK
SOCIETY FOR THE PREVENTION OF CRUELTY
TO CHILDREN; JOHN DOE #1; JOHN DOE #2;
JOHN DOE #3; JOHN DOE #4; JOHN DOE #5,
Defendants.
No. 83 Civ. 2943 (WCC).

October 23, 1984.
WILLIAM KATZ Suite 605 3555 Derry Road East
Malton, Ontario L4T 1B2 Canada, plaintiff, pro se.

ROBERT ABRAMS, ESQ. Attorney General of the State
of New York Attorney for Defendants Molic, Strum,
Abrams and Kurtz Two World Trade Center New York,
New York 10047 MELVYN R. LEVENTHAL, ESQ.
Deputy First Assistant Attorney General STANLEY
CAMHI, ESQ. LILLIAN Z. COHEN, ESQ., Assistant
Attorneys General of counsel.

JOHN P. HALE, ESQ. Attorney for Defendants Hortense
R. Landau and New York Society for the Prevention of
Cruelty to Children 60 East 42nd Street New York, New
York 10017.

BLACK & BROWNSTEIN, ESQS. Attorneys for
Defendant Queensboro Society for the Prevention of
Cruelty to Children 98 Cutter Mill Road Great Neck, New
York 11021 SUSAN STEIN MOSHELL, ESQ., of
counsel.

OPINION AND ORDER

CONNER, District Judge:

**\*1** Plaintiff William Katz ('Katz') filed this pro se
action against the New York Society for the Prevention of
Cruelty to Children ('the New York Society'); the
Queensboro Society for the Prevention of Cruelty to
Children ('the Queensboro Society'); Hortense R. Landau
('Landau'), the Executive Director of the New York
Society; Robert Abrams, the Attorney General of the State
of New York; Robert Molic ('Molic') and Daniel Kurtz,
Assistant Attorneys General of the State of New York;
Irwin Strum ('Strum'), an Assistant Attorney General
and a Director of the Queensboro Society; and five 'John
Does' described as 'unknown agents, employees,
associates and principals of the various defendants.'
Complaint ¶11. Plaintiff alleges that defendants violated
his constitutional rights in various ways, and that their
conduct is actionable under 42 U.S.C. §§ 1981, 1983,
1985(2), 1986, 1988 and 18 U.S.C. §§ 242 and 1702.

Specifically, Katz alleges that from April 30, 1980
until the time he filed his complaint, defendants engaged
in a course of conduct that included overt and covert
surveillance and data collection, opening and inspecting
his private mail, maintaining and disseminating files and
dossiers about him, generating false affidavits about him,
and engaging in selective and malicious prosecution and
abuse of process. Complaint ¶12. The alleged misconduct
is apparently related to Katz's unsuccessful attempts to
have the American Society for the Prevention of Cruelty
to Children ('the American Society') qualified under New
York law to act as a society for the prevention of cruelty
to children in Suffolk County. Katz is the founder and
president of the American Society. Complaint ¶3. The
New York Society and the New York Attorney General's
office have opposed the American Society's application to
become a qualified children's society.[FN1]

The matter is now before the Court on a variety of
motions. All defendants move pursuant to Rule 12(b)(6),
F.R.Civ.P., to dismiss the complaint in its entirety for
failure to state a claim, or in the alternative, to dismiss the
claims brought under 42 U.S.C. §§ 1981, 1985, 1986,
1988 and 18 U.S.C. §§ 242 and 1702.[FN2] Defendants
Molic and Strum move pursuant to Rule 12(b)(2) and (5),
F.R.Civ.P., to dismiss those claims against them in their

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1984 WL 1078 (S.D.N.Y.)

(Cite as: 1984 WL 1078 (S.D.N.Y.))

personal capacities for lack of proper service and personal jurisdiction. Defendants Landau, the New York Society and the Queensboro Society move for an order requiring plaintiff to post a bond as security for defendants' costs and attorney's fees, an order prohibiting plaintiff from communicating with defendants except through defendants' counsel, and an order prohibiting plaintiff and all other parties from carrying firearms while attending proceedings in this action. Finally, plaintiff cross-moves to strike portions of these motions on a number of technical grounds.

*Discussion*

The Court begins by addressing defendants' motion to dismiss the entire complaint for failure to state a claim. Ordinarily, the task of a federal court reviewing the sufficiency of a complaint is an extremely limited one. The court is not to inquire whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232 (1974). A complaint should not be dismissed unless, taking as true the allegations pleaded, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Egleston v. State University College at Geneseo, 535 F.2d 752 (2d Cir. 1976). However, when, as here, the plaintiff alleges a civil rights conspiracy, his allegations must be more specific. See, e.g., Ostrer v. Aronwald, 567 F.2d 551 (2d Cir. 1977). The Court of Appeals for the Circuit has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general' allegations of a conspiracy to deprive a person of his constitutional rights may be dismissed. Id.; Black v. United States, 534 F.2d 524 (2d Cir. 1976); Koch v. Yunich, 533 F.2d 80 (2d Cir. 1976); Fine v. City of New York, 529 F.2d 70 (2d Cir. 1975).

**2** The allegations of Katz's complaint could hardly be more vague and conclusory. It is well established, however, that *pro se* pleadings are 'held to less stringent standards than formal pleadings drafted by lawyers.' Haines v. Kerner, 404 U.S. 519, 520 (1972). In light of the liberal construction that must be accorded *pro se* pleadings, I am constrained to deny defendants' motion to dismiss the entire complaint. Taking the sparse allegations as true, I am unable to conclude that plaintiff can prove no

set of facts that would support a claim for relief under § 1983.^FN3 The complaint at least suggests that officials acting under color of state law interfered with rights guaranteed by the Constitution.

On the other hand, the vague and general allegations make it difficult for defendants to prepare intelligently to prepare their defense. Therefore, the Court directs plaintiff to supplement his complaint within twenty days of the date of this Order by providing, in as much detail as possible, the factual basis for this suit. If plaintiff fails to supplement his complaint as directed, the complaint will be dismissed in its entirety.

Turning to defendants' other motions, it is clear that plaintiff has not stated any cause of action under §§ 1981, 1985, or 1986. Katz's complaint is devoid of any allegations of racial or other class-based animus. Invidious discrimination based upon the plaintiff's membership in a protected class is an essential element of a cause of action under both § 1981 and § 1985. See, e.g., Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Pyles v. Keane, 418 F. Supp. 269, 272 (S.D.N.Y. 1976). The complaint therefore fails to state a cause of action under either section. Katz's complaint also fails to state a claim under § 1986 because that section applies only when a violation of § 1985 can be shown. Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981); Pyles v. Keane, 418 F. Supp. at 269.

Finally, plaintiff has no cause of action against defendants under 18 U.S.C. §§ 242 and 1702. Both of these provisions are criminal statutes and neither creates a private right of action. Powell v. Kopman, 511 F. Supp. at 704 (regarding § 242); Fiorino v. Turner, 476 F. Supp. 962, 963 (D.Mass. 1979) (regarding § 242); Contemporary Mission, Inc. v. U.S. Postal Service, 648 F.2d 97, 103 (2d Cir. 1981) (regarding § 1702); Sciolino v. Marine Midland Bank-Western, 463 F. Supp. 128, 131 (W.D.N.Y. 1979) (regarding § 1702). These claims are therefore dismissed.

The Court also dismisses those claims brought against defendants Molic and Strum in their personal capacities. Where a judgment is sought against a defendant in his individual capacity, service of that individual in his

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1984 WL 1078 (S.D.N.Y.)

(Cite as: 1984 WL 1078 (S.D.N.Y.))

official capacity is not sufficient. Hutchinson v. United States, 677 F.2d 1322, 1328 (9th Cir. 1982); Micklus v. Carlson, 632 F.2d 227, 240 (3d Cir. 1980); Griffith v. Nixon, 518 F.2d 1195, 1196 (2d Cir.) (per curiam), cert. denied, 423 U.S. 995 (1975). It appears that plaintiff attempted to serve defendants Molic and Strum in both their official and individual capacities by delivering the summons and complaint to a receptionist, Terry Adams ('Adams'), at the Office of the Attorney General on April 27, 1983. Adams Aff. ¶5; Katz Aff. ¶9. While that service reached defendants in their official capacities, see Civil Practice Law and Rules ('CPLR') 307, it failed, for the reasons below, to reach them in their personal capacities.

**3** Rule 4, F.R.Civ.P., gives a plaintiff the option of effecting service either under the federal service provisions of Rule 4 or under the applicable service provisions of state law. See F.R.Civ.P. 4(c)(2)(C)(i). Rule 4(d)(1) permits service on an authorized agent, but Adams has averred that she was not authorized to accept personal service on behalf of any employee of the New York State Department of Law. Adams Aff. ¶3. Service was also ineffective under Rule 4(c)(2)(C)(i) because plaintiff did not satisfy the requirements of § 308 of the New York CPLR. While CPLR § 308(2) permits service by delivering a copy of the summons to the defendant's place of business, it requires the plaintiff to mail a second copy of the summons to the defendant's residence. Plaintiff in the instant case did not satisfy this second requirement. Finally, I note that plaintiff did not avail himself of the liberal new procedure under Rule 4(c)(2)(C)(ii), i.e., service by registered or certified mail. Thus, plaintiff has not made effective service upon defendants Molic and Strum, and the claims against them in their personal capacities are therefore dismissed, without prejudice to their reinstatement nunc pro tunc on proof of proper service.

The Court denies the motion of defendants Landau, New York Society, and Queensboro Society for an order requiring plaintiff to post a bond as security for their costs and attorney's fees. Defendants assert that a bond is appropriate primarily on the ground that this action is frivolous. Having determined that the complaint does state a claim, however, I will deny the application at this time.

Defendants Landau, New York Society, and Queensboro Society also move for an order directing plaintiff not to communicate with defendants, their directors and staff while this action is pending, except through defendants' counsel. This request is reasonable and is therefore granted.

Finally, defendants Landau, New York Society, and Queensboro Society move for an order prohibiting plaintiff and all other parties from carrying firearms while attending meetings, conferences, depositions, or any other proceedings in this action. The Court perceives no reason why plaintiff or any other party should need firearms during such proceedings. The motion is therefore granted.

Plaintiff's cross-motion to strike those portions of defendants' motions that fail to specify 'with particularity the grounds therefor' is denied. The cross-motion to strike Queensboro Society's motion papers on the ground that they are not signed by counsel as required by Rule 11 is similarly denied, and the Court declines to assess costs against counsel or take any other action based upon plaintiff's unsupported allegations of bad faith.

The Court hereby lifts the stay of discovery previously imposed and directs the parties to proceed with trial preparations. The parties in this action, together with the parties in American Society for the Prevention of Cruelty to Children v. Strum, 80 Civ. 4282 (WCC), are directed to appear for a pretrial conference on Friday, November 30, 1984, at 10:00 A.M., in Room 608, to discuss a discovery schedule. At that time, the Court will consider consolidating the two cases for purposes of discovery and trial.

**4** SO ORDERED.

FN1 A related action, American Society for the Prevention of Cruelty to Children v. Strum, 80 Civ. 4282 (WCC), is currently pending before this Court.

FN2 While some of the parties submitted affidavits in support of and in opposition to the motion to dismiss for failure to state a claim, the Court has not considered them in deciding the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1984 WL 1078 (S.D.N.Y.)

(Cite as: 1984 WL 1078 (S.D.N.Y.))

motion. Accordingly, the Court has not treated the motion as a motion for summary judgment under Rules 12(b) and 56, F.R.Civ.P.

FN3 Defendants have moved to dismiss that portion of the complaint that refers to § 1988 because it does not create an independent cause of action, but rather allows for an award of attorney's fees to a successful civil rights litigant. Because the Court declines to dismiss the § 1983 claim, the § 1988 portion of the complaint will remain.

Katz v. Molic

Not Reported in F.Supp., 1984 WL 1078 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2009 WL 3164753 (N.D.N.Y.)

(Cite as: 2009 WL 3164753 (N.D.N.Y.))

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Keith Terrell BUTLER, Plaintiff,
v.
J. HYDE, T. Dishaw, T. Howard, R. Gill, K. Compo, J. Barse, Defendants.
No. 9:08–CV–0299 (LEK/GHL).

Sept. 29, 2009.
Keith Terrell Butler, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, David L. Cochran, Esq., of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on September 21, 2009 by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report–Rec. (Dkt. No. 45). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Butler, which were filed on September 25, 2009. Objections (Dkt. No. 47).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report–Recommendation should be

approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report–Recommendation (Dkt. No. 45) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 30) be **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Keith Terrell Butler alleges that Defendants violated his Eighth Amendment rights by subjecting him to excessive force. Currently pending before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 30.) For the reasons that follow, I recommend that Plaintiff's motion be denied.

### I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that on July 29, 2007, he was assaulted by Defendant Correction Officers J. Hyde, K. Compo, J. Barse, J. Dishaw, T. Howard, and Sgt. Gill. Plaintiff alleges that as he was entering his cell, Defendants Hyde, Compo, and Barse threw him on the floor and Defendant Hyde began bending his right fingers and punching him in the back. Defendant Barse twisted Plaintiff's left ankle, almost breaking it. Defendant Dishaw twisted Plaintiff's left arm and punched him in the back of the head. Defendant Howard twisted Plaintiff's right ankle and punched Plaintiff in the back several times. Defendant

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3164753 (N.D.N.Y.)

(Cite as: 2009 WL 3164753 (N.D.N.Y.))

Compo bent Plaintiff's right wrist and punched him several times in the right ribs. Defendant Gill bent the toes on Plaintiff's right foot and broke the skin, drawing blood. (Dkt. No. 1.)

Plaintiff's complaint requests money damages, an order to "give back 24 months of SHU time," a preliminary injunction, and release from the SHU. (Dkt. No. 1 ¶ 9.) Plaintiff now moves for summary judgment. (Dkt. No. 30.) Defendants have opposed the motion. (Dkt. No. 40.) Plaintiff has filed a reply. (Dkt. No. 44.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

**\*2** Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Major League Baseball Properties, Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008). Federal Rule of Civil Procedure 56 and Local Rule 7.1(a)(3) provide the procedural guidelines for meeting this initial burden.

Local Rule 7.1(a)(3) requires parties moving for summary judgment to file and serve a Statement of Material Facts. This statement "shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Facts that are not in the Statement of Material Facts need not be considered. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000). The rule thus puts the onus on the parties to marshal the evidence that supports the motion. *Id.* A district court has no duty, on a motion for summary judgment, to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation

on a district court to perform an independent review of the record to find proof of a factual dispute."); *accord, Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371–72 (N.D.N.Y.2003) (Hurd, J.). "Our District's requirements are not empty formalities. Rules such as L.R. 7.1(a)3 'serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus facilitating its judgment of the necessity for trial." *Jackson v. Broome County Correctional Facility,* 194 F.R.D. 436, 437 (N.D.N.Y.2000) (*citing Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995)).

Local Rule 7.1(a)(3) clearly states that the *"[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."* (Emphasis in original.)

Here, Plaintiff has not filed an accurate and complete Statement of Material Facts. He has filed a "Statement of Material Facts That Are In Dispute," which lists 13 facts. Only one of these facts—that Plaintiff sustained torn ligaments in his right ankle—is supported by a citation to evidence. (Dkt. No. 30 at 4–5 [FN1].) Plaintiff has also filed a "Statement of Material Facts That Are Not in Dispute," which lists five facts that are not supported by any citation to evidence. (Dkt. No. 30 at 6.)

> FN1. Page numbers refer to the page numbers assigned by the Court's electronic filing system.

**\*3** Defendants argue that Plaintiff's motion should be denied based on his failure to file a proper Statement of Material Facts. (Dkt. No. 40–4 at 1–2.) However, given the special solicitude that I am required to give to *pro se* civil rights litigants, I decline to recommend denying Plaintiff's motion on this ground.

## III. ANALYSIS

Plaintiff moves for summary judgment, arguing that his Eighth Amendment rights were violated as a matter of law. (Dkt. No. 30.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3164753 (N.D.N.Y.)

(Cite as: 2009 WL 3164753 (N.D.N.Y.))

imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102.

When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

In determining whether the use of force was wanton and unnecessary, it [is] proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response.

*Hudson,* 503 U.S. at 7 (punctuation omitted). In other words, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. Because much of an excessive force inquiry rests on whether officers' behavior was reasonable, the issue is generally reserved for a jury "whose unique task it [is] to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." *Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999).

Here, Defendant Compo declares that on July 29, 2007, he was outside Plaintiff's cell. Plaintiff was on his bed and unresponsive. (Dkt. No. 40–2 ¶ 3.) Defendant Compo notified his supervisor, Defendant Gill. Defendant Gill and a nurse came to the door of Plaintiff's cell. They could not get any response from Plaintiff. Defendant Gill then ordered Defendants Compo and Hyde "to enter the cell so that [Plaintiff] could be examined to protect his health and safety. As we entered the cell, [Plaintiff] came out of his bed in an aggressive manner and tried to strike me. [Defendants] Dishaw, Barse and Howard then entered the cell to assist myself and [Defendant] Hyde in

restraining and maintaining control of [Plaintiff]." (Dkt. No. 40–2 ¶ 4.)

**\*4** Defendant Compo declares that the "degree of force used in restraining [Plaintiff] was necessary and reasonably required for self defense ... to prevent injury to myself, the other officers and [Plaintiff]." (Dkt. No. 40–2 ¶ 5.) Defendant Compo "reasonably believed that the degree of force was reasonably necessary ... The force was applied in a good faith effort to maintain and restore discipline, to prevent injury and in self defense. At no time did any of the officers ... use excessive force." (Dkt. No. 40–2 ¶ 6.)

As Plaintiff admits, Defendant Compo's testimony raises a triable issue of fact regarding whether Defendants violated Plaintiff's Eighth Amendment rights. (Dkt. No. 44 at 3) ("The affidavits of the Plaintiff and the Defendants are squarely contradictory as to what force was used, when it was used, and why it was used ... the factual dispute is ... material ... For the foregoing reasons the defendants' motion for summary judgment should be denied [FN2]."). Therefore, I recommend that the Court deny Plaintiff's motion for summary judgment.

> FN2. Defendants have not moved for summary judgment.

**ACCORDINGLY,** it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 30) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.

Butler v. Hyde

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3164753 (N.D.N.Y.)

(Cite as: 2009 WL 3164753 (N.D.N.Y.))

Not Reported in F.Supp.2d, 2009 WL 3164753
(N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2732699 (N.D.N.Y.)

(Cite as: 2008 WL 2732699 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony D. AMAKER, Plaintiff,
v.
Glenn S. GOORD, Commissioner of N.Y.S. D.O.C.S.;
Lucien J. Leclaire, Deputy Commissioner; R. Girdich,
Superintendent; George Duncan, Superintendent; M.D.
Lester Wright; G. Keinert, Deputy Superintendent; J.
Martin; N. Bezio; Spinner, Corrections Officer; B.
Laduke, Corrections Officer; W. Trombly; P. Dabiew,
Corrections Officer; C.O. McCasland; Champagne,
Corrections Officer; T. Nephew, Corrections Officer;
SGT. Kourofsky; D. Barney, Corrections Officer; D.
Rondeau, Corrections Officer; John Donelli, Deputy
Superintendent; M. Jones, Corrections Officer; A.
Hulse, Corrections Officer; A. Biro, Corrections
Officer; J. Flaharty, Corrections Officer; R. Eurich;
Capt. Lucas; E. Artzu; Nurse Lopez; S. Kinney; L.
Myers; J. Clegg; D. Wolfe; E. Delgado; D. Botsford; J.
Kelley; P. Guzman; D. Laclaire, Deputy Superintendent;
Nurse Miller; G. Waterfont; D. Bufferman; S. Bernardi,
Deputy Commissioner; and Nurse Admin. Tousignant,
Defendants.
No. 9:03-CV-1003.

July 10, 2008.
Anthony D. Amaker, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Risa L. Viglucci, Esq., Assistant Attorney
General, Albany, NY, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. NORMAN A. MORDUE, Chief Judge.
**BACKGROUND**
**\*1** Plaintiff, an inmate in the custody of the New York
State Department of Correctional Services ("DOCS"),
brought this action under 42 U.S.C. § 1983, alleging that

defendants, forty-one DOCS employees, violated his
constitutional rights under the Fourth, Eighth, and
Fourteenth Amendments. Defendants [FN1] move (Dkt. No.
152) for summary judgment, and plaintiff cross-moves
(Dkt. No. 157) for summary judgment.

> FN1. It appears that 35 of the 41 named
> defendants have been served, and that all 35 are
> represented by the New York State Attorney
> General. Those named defendants who have not
> been served are: Spinner, Nephew, Rondeau,
> Wolfe, Delgado, and Kelley. If this is not
> correct, the Court requests immediate
> clarification from the Attorney General's office.

The motions were referred to United States
Magistrate Judge David R. Homer for a report and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c). In his Report and Recommendation
(Dkt. No. 160), Magistrate Judge Homer recommends that
(1) defendants' motion be granted in part and denied in
part, and (2) plaintiff's cross motion be denied.

Defendants object (Dkt. No. 164) [FN2] to so much of
the Report and Recommendation as recommends that their
motion be denied in part. Plaintiff objects (Dkt. No. 166),
contending that he is entitled to summary judgment.

> FN2. Upon electronic filing, defendants'
> objection (Dkt. No. 164) was incorrectly
> designated as a memorandum of law.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court
reviews *de novo* those parts of a report and
recommendation to which a party specifically objects.
Where only general objections are filed, the Court reviews
for clear error. *See Brown v. Peters,* 1997 WL
599355,*2-*3 (N.D.N.Y.), *aff'd without op.,* 175 F.3d
1007 (2d Cir.1999). Failure to object to any portion of a
report and recommendation waives further judicial review
of the matters therein. *See Roldan v. Racette,* 984 F.2d 85,
89 (2d Cir.1993).

The Court adopts Magistrate Judge Homer's recitation

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2732699 (N.D.N.Y.)

(Cite as: 2008 WL 2732699 (N.D.N.Y.))

of the facts and discussion of the law. Upon *de novo* review, the Court adopts the Report and Recommendation insofar as it recommends denial of summary judgment to plaintiff. With respect to defendants' motion for summary judgment, the Court adopts in full so much of Magistrate Judge Homer's Report and Recommendation as recommends granting summary judgment dismissing all Fourth Amendment claims and all Eighth Amendment claims based on inadequate medical care. The Court further adopts so much of the Report and Recommendation as recommends denial of summary judgment dismissing the Fourteenth Amendment due process claim. As is discussed below, some or all claims are dismissed against certain defendants.

Defendants object to Magistrate Judge Homer's Report and Recommendation insofar as it recommends denial of summary judgment with respect to plaintiff's Eighth Amendment claims of excessive force. Plaintiff claims excessive force was used against him on September 5, 2002, in two separate incidents stemming from his refusal to submit a DNA sample: first, the forced extraction from his cell at Upstate Correctional Facility ("Upstate"); and second, the subsequent blood draw at Downstate Correctional Facility ("Downstate"). More specifically, he claims that during the extraction from his cell one of the officers struck him several times with the ram, breaking his ribs, and that during the blood draw, the officers "tried to break" his fingers and bent his wrist so that his face was "twisted up in pain."

**\*2** To make out an Eighth Amendment claim based on the use of excessive force against him, an inmate must meet an objective requirement by showing that the deprivation was "sufficiently serious" in light of "contemporary standards of decency"; he must also meet a subjective requirement by showing that defendants acted with a "wanton state of mind." *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). With respect to defendants' state of mind, the issue is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (citation and quotation marks omitted). Even where there is no significant injury, the malicious use of force for the purpose of causing harm constitutes an Eighth

Amendment violation *per se,* because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *See Griffin,* 193 F.3d at 91 (citations and internal quotations omitted).

On the record before the Court, defendants have not established by competent evidence that plaintiff was not subjected to excessive force during the cell-extraction incident at Upstate. In support of their allegations regarding the events of September 5, 2002, defendants rely on the incident reports attached to the declaration of Selsky. However, Selsky lacks firsthand knowledge of most or all of the matters asserted in those reports. The reports themselves are not competent evidence; they are not admissible under the business records exception of section 803(6) of the Federal Rules of Evidence, because they lack the requisite degree of reliability. *See Bracey v. Herringa,* 466 F.2d 702, 705 (2d Cir.1972); *accord Giles v. Rhodes,* 2000 WL 1425046, \*8 (S.D.N.Y. Sept. 27, 2000). In support of the motion, defendants also rely on a videotape of the cell extraction. The Court has viewed this videotape, which strongly supports defendants' version of events. However, it cannot be said upon reviewing this tape that it is absolutely impossible that at some point during the cell extraction an officer struck plaintiff several times with the ram, as he claims. Nor can it be said that if this occurred, no rational jury could find that it constituted the malicious use of force to cause harm. It is true that plaintiff's medical records show no broken ribs and no other significant injury; nevertheless, this is insufficient on this record to rule out the possibility that plaintiff was subjected to the malicious use of force by being struck without justification. On this record, the videotape and medical records are insufficient to warrant summary judgment dismissing plaintiff's excessive force claims based on the cell extraction incident of September 5, 2002.

As for the blood draw at Downstate, it is undisputed that plaintiff refused to cooperate, that corrections officers restrained him, that he clenched his fist, and that an officer pried his fist open to enable the nurse to take a DNA sample. Plaintiff claims that the officers "tried to break" his fingers and that his wrist was bent so that his face was "twisted up in pain." Plaintiff does not, however, state any facts which would support a finding that the officers

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2732699 (N.D.N.Y.)

(Cite as: 2008 WL 2732699 (N.D.N.Y.))

applied more force than was necessary to restrain him and pry open his fist, actions which they were legally justified in performing. Plaintiff's allegations that he felt pain during this process or felt as if his fingers would break do not establish that the force used was malicious or otherwise excessive. He claims no injury, nor do the medical records show any injury resulting from this process. Viewing the evidence in the light most favorable to plaintiff, and drawing all inferences in his favor, the Court finds that defendants are entitled to summary judgment dismissing all excessive force claims stemming from the blood draw at Downstate.

**\*3** Defendants further seek dismissal of some or all claims against particular defendants on various grounds. The Court has reviewed the record in detail and, upon *de novo* review, rules as follows with respect to each moving defendant. All claims against the following defendants are dismissed: Goord, LeClaire, Girdich, Duncan, Wright, Donelli, Lucas, Artuz, Kinney, Clegg,

Botsford, LaClaire, and Bernardi. Plaintiff does not allege their personal involvement or any ground for supervisory liability on their part for excessive force, due process violations, or retaliation. To the extent plaintiff alleges these defendants were involved in the denial of medical care, this Court adopts Magistrate Judge Homer' recommendation to dismiss all such claims.

Further, inasmuch as all Eighth Amendment claims for inadequate medical care are dismissed, the action is dismissed against the following nurses: Dabiew, Guzman, Miller, Waterfont, Bufferman, and Tousignant. With respect to nurses Lopez and Myers at Downstate, the complaint says Myers watched while Lopez illegally drew blood. The blood draw was not illegal; thus, this states no claim against either of them. Plaintiff further claims that while the officers were "holding and bending" his wrist for an unnamed nurse during the blood draw incident, the nurse "request[ed] these officers to inflict further pain." Even accepting the truth of this improbable allegation, there is no basis to find that this nurse had authority to direct the officers, nor is there a claim that this nurse used excessive force. The claims against Lopez and Myers are dismissed.

Reading the complaint and submissions most liberally, the Court finds plaintiff sufficiently alleges some degree of personal involvement in the use of excessive force during the cell extraction by the following Upstate defendants: Martin, Bezio, McCasland, Champagne, Kourofsky, and Barney. [FN3] On this record, it cannot be said as a matter of law that these defendants are entitled to dismissal of these claims on the ground of qualified immunity; if plaintiff's version of events is accepted as true, they could not reasonably have believed their conduct was consistent with his Eighth Amendment rights. *See Anderson v. Creighton,* 483 U.S. 635, 639 (1987). Thus, the Court denies summary judgment dismissing the cell-extraction excessive force claims against these defendants.

> FN3. The Court is aware that Magistrate Judge Homer recommends summary judgment dismissing the cell-extraction excessive force claims against Martin, Bezio, and Kourofsky on the ground that plaintiff alleges only that they were in the chain of command. It does not clearly appear from plaintiff's complaint, however, that he asserts only this limited ground for liability on the part of these defendants. Rather, he appears to allege that they were present during the extraction and participated to some degree. These defendants have not established entitlement to dismissal of these claims.

There is no record support for plaintiff's Eighth Amendment claims against Trombley and LaDuke, and summary judgment is granted dismissing these claims. Nor is there merit to plaintiff's claims that LaDuke and Kourofsky filed retaliatory false misbehavior reports against him; in fact, based on plaintiff's own admissions, the misbehavior reports were true and justified, and there is no basis to find a retaliatory motive. All claims against Trombley and LaDuke are dismissed, and any retaliation claims against Kourofsky are dismissed.

Plaintiff also asserts a Fourteenth Amendment due process claim against hearing officer Kienert. The Court adopts Magistrate Judge Homer's treatment of the due process issue. Whether Kienert is entitled to qualified immunity cannot be determined on this record. Summary

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2732699 (N.D.N.Y.)

(Cite as: 2008 WL 2732699 (N.D.N.Y.))

judgment dismissing this claim is denied.

**\*4** To the extent plaintiff sets forth an Eighth Amendment claim against Kienert based on Kienert's authorization of the use of force to extract plaintiff from his cell at Upstate, the authorization was proper, inasmuch as plaintiff admits he repeatedly refused to comply with orders to come out of his cell for the medical trip. There is no allegation that Kienert was involved in the cell extraction in any other manner; thus, there is no Eighth Amendment claim against Kienert.

The case will proceed to trial on the remaining claims against the remaining defendants.[FN4]

> [FN4.] The complaint also contains some allegations about missing legal mail and papers. It does not appear whether plaintiff intends to state some separate cause of action in this regard. The allegations are not sufficiently particular to make out a claim, nor does plaintiff complain of specific conduct on the part of named defendants. To the extent the complaint may be read as stating a claim in this respect, any such claim is dismissed without prejudice.

## CONCLUSION

To summarize, the Court adopts Magistrate Judge Homer's recitation of the facts and discussion of the law in his Report and Recommendation. The Court adopts in full so much of the Report and Recommendation as recommends granting defendants' motion for summary judgment dismissing all Fourth Amendment claims and all Eighth Amendment claims based on inadequate medical care. The Court further adopts so much of the Report and Recommendation as recommends denying summary judgment dismissing the Fourteenth Amendment due process claim. To the extent the complaint asserts retaliation claims, such claims are dismissed. The Court further adopts in full so much of Magistrate Judge Homer's Report and Recommendation as recommends denial of plaintiff's motion for summary judgment.

The case will proceed to trial on the remaining claims (the cell-extraction excessive force claim and the due process claim) against defendants Kienert (the due process

claim only; the excessive force claim is dismissed), Martin (the excessive force claim), Bezio (the excessive force claim), McCasland (the excessive force claim), Champagne (the excessive force claim), Kourofsky (the excessive force claim only; any retaliation claim is dismissed), and Barney (the excessive force claim).

It is therefore

ORDERED that the Report and Recommendation of United States Magistrate Judge David R. Homer (Dkt. No. 160) is adopted in part and rejected in part as set forth herein; and it is further

ORDERED that defendants' motion (Dkt. No. 152) for summary judgment is granted in part and denied in part as set forth herein; and it is further

ORDERED that all claims are dismissed against the following defendants: Goord, LeClaire, Girdich, Duncan, Wright, LaDuke, Trombley, Dabiew, Donelli, Jones, Hulse, Biro, Flaherty, Eurich, Lucas, Artuz, Lopez, Kinney, Myers, Clegg, Botsford, Guzman, LaClaire, Miller, Waterfont, Bufferman, Bernardi, and Tousignant; and it is further

ORDERED that the case will proceed to trial against Kienert, Martin, Bezio, McCasland, Champagne, Kourofsky, and Barney, as set forth herein; and it is further

ORDERED that Clerk of the Court is directed to appoint trial counsel; and it is further

ORDERED that this case is Deemed Trial Ready as of August 29, 2008, and a trial date will be set by Chief Judge Norman A. Mordue upon the appointment of trial counsel; and it is further

**\*5** ORDERED that plaintiff's motion (Dkt. No. 157) for summary judgment is denied in its entirety.

IT IS SO ORDERED.

N.D.N.Y.,2008.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2732699 (N.D.N.Y.)

(Cite as: 2008 WL 2732699 (N.D.N.Y.))

Amaker v. Goord
Not Reported in F.Supp.2d, 2008 WL 2732699
(N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.