**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DIONISIO SOMERVILLE,**

                                  **Plaintiff,**

   vs.                                                          **9:11-cv-556**
                                                                       **(MAD/DEP)**

**J. SAUNDERS,** Correction Officer, Great Meadow Correctional Facility; **BEZIO,** Correction Officer, Great Meadow Correctional Facility; **A. WHITE,** Correction Officer, Great Meadow Correctional Facility; **LAWRENCE,** Correction Officer, Great Meadow Correctional Facility; **M. SAGE,** Correction Officer, Great Meadow Correctional Facility; **M. KUHL,** Correction Officer, Great Meadow Correctional Facility; **VANDENBURG,** Correction Officer, Great Meadow Correctional Facility; **CROSS,** Correction Officer, Great Meadow Correctional Facility; and **MULLIGAN,** Correction Officer, Great Meadow Correctional Facility,

                                    **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**NAPIERSKI, VANDENBURGH,**        **ANDREW S. HOLLAND, ESQ.**
**NAPIERSKI & O'CONNOR, LLP**
296 Washington Avenue Ext., Suite 3
Albany, New York 12203
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**   **MELISSA A. LATINO, AAG**
**ATTORNEY GENERAL**                    **JAMES J. SEAMAN, AAG**
The Capital
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Pending before the Court are Plaintiff's motion in limine, *see* Dkt. No. 74, and Defendants' motion in limine, *see* Dkt. No. 82. At issue in this Memorandum-Decision and Order is the admissibility of evidence of Plaintiff's criminal convictions to impeach his credibility.

## II. BACKGROUND

Plaintiff, a New York State prison inmate, commenced this Section 1983 action against nine corrections officers employed at Great Meadow Correctional Facility. *See* Dkt. No. 1. In his complaint, Plaintiff alleges that he was subjected to an unprovoked attack by Defendants, violating his rights under the Eighth Amendment to the United States Constitution, and causing him to sustain injuries requiring medical treatment.

Plaintiff is presently incarcerated, having been convicted of, *inter alia*, the following felonies in 1994, which the Defendants now seek to have admitted: Murder in the Second Degree in violation of N.Y. Penal Law § 125.25; Conspiracy in the Second and Fourth Degrees in violation of N.Y. Penal Law §§ 105.15 and 105.10; Criminal Facilitation in the Second Degree in violation of N.Y. Penal Law § 115.05; Robbery in the First Degree in violation of N.Y. Penal Law § 160.15; Criminal Use of a Firearm in the First Degree in violation of N.Y. Penal Law § 265.09; Criminal Possession of a Weapon in the Second and Third Degrees in violation of N.Y. Penal Law §§ 265.03 and 265.02; and Hindering Prosecution in the First and Second Degrees in violation of N.Y. Penal Law §§ 205.65 and 205.60. *See People v. Somerville*, 249 A.D.2d 687 (3rd Dept. 1998).

The factual circumstances underlying Plaintiff's convictions, to the extent they were reported by the reviewing court on Plaintiff's direct appeal, are as follows:

> On September 5, 1990, defendant [Dionisio Somerville] and Darrell Thomas conspired to rob Martin McCollum. In accordance with the prearranged plan, Thomas lured McCollum to a secluded spot in the City of Schenectady, Schenectady County, where defendant,

2

masked and armed, robbed McCollum and feigned a robbery of Thomas.

Thereafter, on October 23, 1990 defendant, pursuant to a prearranged plan, gave Thomas a .32-caliber revolver and Thomas lured James Mannix into Vale Cemetery where he shot and killed Mannix and stole $200 from him. Defendant and Thomas divided the proceeds of the robbery and shared the considerable stash of Mannix's drugs that were secreted in Thomas' apartment.

Defendant, in an effort to deflect any suspicion that might be directed at him, thereafter made anonymous phone calls to the police, the District Attorney's office and a local television station advising that he had observed a blue Mercedes-Benz automobile drive to the entrance of Vale Cemetery, whereupon three black males exited the vehicle and entered the cemetery. Moments later, according to defendant, two black males returned to the car and drove off.

Shortly after the homicide, defendant was contacted by the police and on three different occasions over a five-day period variously stated that he did not know the victim, that he did know the victim and was with him for a period of time on October 23, 1990 and, finally, when he last saw the victim on that date, he was climbing into a blue Mercedes-Benz which then drove away.

In December 1991, defendant was arrested and charged with numerous sales of cocaine. While in jail pending disposition of the drug charges, defendant telephoned Investigator Robert McHugh, who had questioned defendant about the homicide a year earlier, and offered to act as a confidential drug informant in exchange for leniency regarding his pending charges. McHugh rejected the offer but advised that he would be interested in any further information regarding the Vale Cemetery homicide.

Ultimately, defendant agreed to provide additional information regarding the homicide as a result of which Bruce Rubin (defendant's attorney in the pending drug charges), Joseph Aponte (Rubin's paralegal and defendant's uncle), McHugh, Assistant District Attorney Phillip Mueller and three additional investigators met at the District Attorney's office on December 27, 1991. Prior to any conversation, defendant met privately with his attorney and his uncle. Defendant then gave a fourth version of his knowledge of the events of October 23, 1990, in which he added considerable detail to the third statement he previously had given the police and described an individual who he claimed was the "shooter". When

defendant was advised that the individual he described had an alibi for that date, defendant became agitated and the questioning ceased while defendant consulted privately with his attorney and his uncle.

The meeting reconvened with defendant expressing a desire to continue. After being advised of his Miranda warnings, defendant proceeded to give a fifth version of his knowledge of the events of October 23, 1990. In this version, defendant admitted that his previous statements had been false. He then advised that he had loaned Thomas a gun a week before the murder. When defendant went to Thomas' house to retrieve the gun, Thomas told him he had shot Mannix in the cemetery. Defendant said that he did not believe Thomas, but he nevertheless wiped the gun of fingerprints and threw the gun and clip separately into two sewer drains, the location of which he described.

After relating this fifth version of events, defendant was advised that a plea offer would be extended if that version could be verified to the satisfaction of the District Attorney. In an effort to verify defendant's story, defendant was asked if he would submit to a polygraph test and he agreed. Defendant and his attorney further agreed that defense counsel need not be present during the test unless a written statement was to be taken. Four days later, on December 31, 1991, Investigator James Horton met with defendant for the purpose of administering the polygraph examination. During the pretest interview, while Horton was questioning defendant concerning his personal history and explaining how the polygraph machine worked, defendant broke down, admitted that all of his prior statements were false and confessed that he had planned and assisted Thomas in the murder and robbery of Mannix. In response to questioning by Horton, defendant gave a detailed version of all of the events leading up to the homicide. A written statement was not taken, however, due to the absence of defendant's attorney.

*Somerville*, 249 A.D.2d at 687-89.

### III. DISCUSSION

Plaintiff seeks to preclude Defendants from introducing (and Defendants seek to have admitted) testimony and/or documentary evidence of his felony convictions for the purpose of impeaching his credibility. In the alternative, Plaintiff argues that "if the Court were to hold that it is proper to inquire about plaintiff's underlying conviction, the defense should be limited to

4

inquiring into the fact that plaintiff is a convicted felon[.] At the very least, the defense should be limited to discussing the top count of which plaintiff was convicted." Dkt. No. 85 at 7.[1] Plaintiff argues that the Court should preclude evidence of his felony convictions, which are twenty years old, because they are not relevant and the prejudicial effect of their admission substantially outweighs their probative value. Plaintiff contends that these remote convictions have no bearing on his credibility today. Plaintiff also notes that these convictions were the result of a single criminal transaction, and if evidence of each conviction is admitted, Plaintiff will suffer prejudice as a result of the jury learning of the quantity of crimes he was convicted of. In response, Defendants contend that the felony convictions are probative of Plaintiff's propensity to testify truthfully.

**A.     Legal Standards**

The parties agree that Federal Rule of Evidence 609 governs the admissibility of criminal convictions for impeachment purposes in civil actions. Pursuant to this Rule, there are two ways in which such evidence may be admitted. First, Rule 609(a)(1) provides that, for the purpose of attacking the credibility of a witness:

> [E]vidence that a witness other than an accused has been convicted
> of a crime shall be admitted, subject to Rule 403,[2] if the crime was
> punishable by death or imprisonment in excess of one year under
> the law under which the witness was convicted[.]

---

[1] To avoid confusion, the Court refers to the page numbers assigned by the Electronic Case Filing system.

[2] Rule 403, in turn, provides:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice,
> confusion of the issues, or misleading the jury, or by considerations
> of undue delay, waste of time, or needless presentation of
> cumulative evidence.

5

In other words:

> The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' Fed. R. Evid. 403. This determination is left to the sound discretion of the district court.

*United States v. Estrada*, 430 F.3d 606, 621 (2d Cir. 2005).

"In balancing probative value against prejudicial effect under this rule, courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citations omitted). "Although all of these factors are relevant, 'prime among them is the first factor, i.e., whether the crime, by its nature, is probative of a lack of veracity.'" *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (citing *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir.1977)).

Second, "evidence that a witness has been convicted of a crime involving 'dishonesty or false statement' must be admitted [under Rule 609(a)(2)] regardless of the severity of the punishment or any resulting prejudice." *Daniels*, 986 F. Supp. at 250 (citing Fed. R. Evid. 609(a)(2)). As a result, "Congress emphasized that the second prong [of Rule 609(a)] was meant to refer to convictions 'peculiarly probative of credibility,' such as those for 'perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.'" *Id.* (quoting Conf. Rep. No. 93–1597, *reprinted in* 1974 U.S.C.C.A.N. 7098, 7103); *see also*

*United States v. Estrada*, 430 F.3d 606, 616 n.3 (2d Cir. 2005) (same).

"However, Rule 609(b) contains a time limitation on the admissibility of prior criminal convictions for impeachment purposes [under either Rule 609(a)(1) or (a)(2)]." *Robinson v. Troyan*, No. CV 07–4846(ETB), 2011 WL 5416324, *2 (E.D.N.Y. Nov. 8, 2011). "Criminal convictions more than ten years old are not admissible for impeachment unless the court determines that, in the interest of justice, the probative value of the conviction substantially outweighs its prejudicial effect." *Daniels*, 986 F. Supp. at 249 (citing Fed. R. Evid. 609(b)). "[W]hen convictions more than ten years old are sought to be introduced into evidence pursuant to Rule 609(b) the district judge should make an on-the-record determination supported by specific facts and circumstances that the probative value of the evidence substantially outweighs its prejudicial effect." *United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978). "Under Rule 609(b), 'convictions over 10 years old should be admitted very rarely and only in exceptional circumstances,' as ' convictions over ten years old generally do not have much probative value.'" *United States v. Brown*, 606 F. Supp. 2d at 313 (quoting Fed. R. Evid. 609(b), Advisory Committee's Note).

If a court finds evidence of a prior conviction to be admissible for purposes of impeachment, the impeaching party "'is generally limited to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence.'" *Id.* at 319 n.8 (quoting 4 Weinstein's Federal Evidence § 609.20[2] (2d ed. 2008)); *see also Estrada*, 430 F.3d at 617 ("Rule 609(a)(1) thus contemplates that district courts will admit evidence of the nature of a witness's prior felony convictions, including the statutory name of the offense, the date of conviction, and the sentence imposed, subject to Rule 403."). "In the Second Circuit, it is within the discretion of the district courts to further limit th evidence of the prior conviction to

7

exclude the nature or statutory name of the offense[, and] a trial court may also exclude evidence of the length of the sentence when its probative value is outweighed by its prejudicial effect." *Brown*, 606 F. Supp. 2d at 312 (citations omitted).

**B.    Analysis**

Plaintiff has ten (10) felony convictions which Defendants seek to have admitted as impeachment evidence, all of which are approximately twenty years old. Thus, as an initial matter, the Court must decide whether each of Plaintiff's felony convictions is subject to the Rule 609(b) presumption against admissibility for "remote" convictions, or one of the Rule 609(a) provisions. For those convictions which are not subject to Rule 609(b), the Court must then decide whether they are subject to Rule 403 balancing, pursuant to Rule 609(a)(1), or whether they are crimes of dishonesty automatically admissible under Rule 609(a)(2). Finally, depending on the applicable standard, the Court must then weigh the probative value of these convictions against the potential prejudice, and rule accordingly.

   **1.    Rule 609(b)**

Federal Rule of Evidence 609(b) states, in pertinent part, as follows:

> Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if [ ] its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect[.]

Thus, by its terms, Rule 609(b) provides that evidence of a crime is not excludable if the witness is still incarcerated for that crime. *See Blake v. Coughlin*, 205 F.3d 1321, 2000 WL 233550, *1 (2d Cir. 2000) (summary order); *Eng. v. Blood*, No. 9:04-CV-1146, 2008 WL 2788894, *7 (N.D.N.Y. July 17, 2008).

Defendants contend that since Plaintiff is currently incarcerated for an indeterminate

8

sentence of twenty-five years to life arising from his 1994 felony convictions, the Rule 609(b) prohibition does not apply. Plaintiff counters by noting that because his sentences for these convictions ran concurrently, any felony for which the maximum sentence has already expired should be subject to the Rule 609(b) analysis. That is, but for the contemporaneous felony convictions for which he is still incarcerated, Plaintiff would have been released from imprisonment more than ten years ago, making those convictions "remote" for the purposes of the Rule 609(b) analysis.

"The existence of previous federal case law dealing with this situation in a Rule 609(b) time-period calculation context is virtually non-existent." *United States v. Pettiford*, 238 F.R.D. 33, 40 (D.D.C. 2006). Based upon this Court's independent research, the one court that has considered such a situation credited Plaintiff's argument here. *See id.* After reviewing the legislative history of Rule 609(b), the court in *Pettiford* found that current version of the rule "'makes clear that confinement for one conviction has no effect on calculating the ten years applicable to another conviction.'" *Pettiford*, 238 F.R.D. at 40 (quoting Charles Alan Wright & Victor James Gold, 28 Federal Practice & Procedure § 6136, at 258059 n.14 (1st ed.1993)). Accordingly, the court in *Pettiford* concluded:

> Based upon this reasoning, while Defendant was released from incarceration on December 3, 2004 following his convictions for second-degree murder while armed and carrying a pistol without a license, it would be improper to use that date as the starting point for the remoteness calculation under Rule 609(b) for the pistol without a license conviction. In short, December 3, 2004 does not represent the true "release of the witness from the confinement imposed for that conviction," Fed. R. Evid. 609(b) (emphasis added), as Defendant was only sentenced on September 9, 1991 to a one-year term in prison for his pistol without a license conviction, *Pettiford*, 700 A.2d at 208–09. Defendant's contemporaneous second-degree murder while armed conviction, which carried with it an extensive sentence, cannot be used to "piggyback" his carrying a pistol without a license conviction into the 10-year limitations

9

> period set out in Rule 609(b). As such, the Court – for the purposes of the Rule 609(b) analysis – shall consider Defendant's conviction for carrying a pistol without a license, in violation of D.C.Code § 22–3204(a) (1989), to be a "remote" conviction falling outside of the presumptive 10–year period set out in Federal Rule of Evidence 609(b).

*Pettiford*, 238 F.R.D. at 40.

This Court agrees with Plaintiff and the reasoning adopted by the court in *Pettiford*. Thus, the Court must next determine which of Plaintiff's convictions are a "remote" conviction falling outside of the presumptive ten year period.

As noted above, judgement for the felony convictions at issue was entered against Plaintiff on January 10, 1994. *Somerville*, 249 A.D.2d 687. Plaintiff was thereafter sentenced to an indeterminate term of imprisonment of twenty-five years to life. *Id.* at 689. Plaintiff is currently serving an aggregate indeterminate sentence of thirty-six years to life, as a result of these felony convictions as well as other convictions not at issue here. Since Plaintiff is serving his sentences concurrently for these various crimes, and the state court record has not been presented to this Court as part of the parties' motions, the Court must consider the maximum sentences for each of these crimes under state law.

New York Penal Law § 70.00 sets forth the maximum terms of indeterminate sentences for felony convictions, as follows:

> (a) For a class A felony, the term shall be life imprisonment;
> (b) For a class B felony, the term shall be fixed by the court, and shall not exceed twenty-five years;
> (c) For a class C felony, the term shall be fixed by the court, and shall not exceed fifteen years;
> (d) For a class D felony, the term shall be fixed by the court, and shall not exceed seven years; and
> (e) For a class E felony, the term shall be fixed by the court, and shall not exceed four years.

Thus, for each felony conviction, the Court must calculate when Plaintiff would have completed

10

his "Maximum Term" for each conviction, assuming that he was not serving a sentence for any other conviction, and then determine whether an additional ten years has passed since that time. Depending on this "Expiration Date," the Court can then decide whether the conviction is "Remote" for the purposes of Rule 609(b). For ease of understanding and reference, the Court has summarized its findings in the table below:

| **Offense** | **Maximum Term** | **Expiration Date** | **Remote** |
|---|---|---|---|
| N.Y. Penal Law § 125.25 (Class A) | Life | n/a[3] | No |
| N.Y. Penal Law § 105.15 (Class B) | 25 years | 2029 | No |
| N.Y. Penal Law § 105.10 (Class E) | 4 years | 2008 | Yes |
| N.Y. Penal Law § 115.05 (Class C) | 15 years | 2019 | No |
| N.Y. Penal Law § 160.15 (Class B) | 25 years | 2029 | No |
| N.Y. Penal Law § 265.09 (Class B) | 30 years[4] | 2034 | No |
| N.Y. Penal Law § 265.03 (Class C) | 15 years | 2019 | No |
| N.Y. Penal Law § 265.02 (Class D) | 7 years | 2011 | Yes |
| N.Y. Penal Law § 205.65 (Class D) | 7 years | 2011 | Yes |
| N.Y. Penal Law § 205.60 (Class E) | 4 years | 2008 | Yes |

Based on the foregoing, the Court finds that Plaintiff's convictions under N.Y. Penal Law § 105.10, N.Y. Penal Law § 265.02, N.Y. Penal Law § 205.65, and N.Y. Penal Law § 205.60 are "remote" under Rule 609(b) and presumptively inadmissible. As to Plaintiff's convictions under

---

[3] Since Plaintiff is currently incarcerated, and the maximum sentence for his murder conviction under Penal Law § 125.25 is life in prison, it is impossible for this sentence to have "expired."

[4] A conviction of Criminal Use of a Firearm in the First Degree imposes a five year sentence to be served consecutively to the underlying Class B felony conviction. N.Y. Penal Law § 265.09.

11

N.Y. Penal Law § 125.25, N.Y. Penal Law § 105.15, N.Y. Penal Law § 115.05, N.Y. Penal Law § 160.15, N.Y. Penal Law § 265.09, and N.Y. Penal Law § 265.03, the Court must next determine whether they are subject to Rule 609(a)(1) balancing or presumptively admissible as crimes of dishonesty under Rule 609(a)(2).

   2.     **Rule 609(a)**

Crimes within the scope of Federal Rule of Evidence 609(a)(2) are those indicative of truthfulness, such as "perjury, false statement, fraud, or offenses in the nature of crimen falsi which involve deceit, untruthfulness, or falsification." *Eng v. Scully*, 146 F.R.D. 74, 78 (S.D.N.Y. Feb. 1, 1993) (citing Fed. R. Evid. 609 Senate and House Conference Committees' report). "While much successful crime involves some quantum of stealth, all such conduct does not, as a result, constitute crime of dishonesty or false statement for the purposes of Rule 609(a)(2)." *Estrada*, 430 F.3d at 614 (citing *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977)). A party "desiring to take advantage of automatic admission of a conviction under the second prong must demonstrate to the court that a particular prior conviction rested on facts warranting the dishonesty or false statement description." *Hayes*, 553 F.2d at 827 (quotation and citation omitted). Application of Rule 609(a)(2)

> requires that the proponent have ready proof that the conviction required the factfinder to find, or the defendant to admit, an act of dishonesty or false statement. Ordinarily, the statutory elements of the crime will indicate whether it is one of dishonesty or false statement. Where the deceitful nature of the crime is not apparent from the statute and the face of the judgment – as, for example, where the conviction simply records a finding of guilt for a statutory offense that does not reference deceit expressly – a proponent may offer information such as an indictment, a statement of admitted facts, or jury instructions to show that the factfinder had to find, or the defendant had to admit, an act of dishonesty or false statement in order for the witness to have been convicted.

Fed. R. Evid. 609, Advisory Committee's Note).

12

The Court has relatively limited factual information regarding whether such convictions were predicated on a dishonest act or false statement. The only facts proffered by Defendants in this regard are certain conclusory representations in Defendants' memorandum of law, and those set forth in the reported decision following Plaintiff's direct appeal of his conviction, *see Somerville*, 249 A.D.2d 687. The Court may, of course, take judicial notice of the fact of Plaintiff's convictions, pursuant to Federal Rule of Evidence 201. *See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 62 (E.D.N.Y. 2012) (collecting cases). However, it is not clear that the appellate decision on Plaintiff's direct appeal of his convictions is the form of evidence contemplated by the notes to Rule 609. Moreover, since the factual recitation in the appellate decision was for the purposes of reviewing the constitutionality of Plaintiff's conviction and it does not necessarily identify which facts underlie which elements of which offenses, it is of limited utility in this analysis.

Thus, the Court must look to the elements of the relevant offenses as provided by statute. Having reviewed the elements of each of the crimes subject to Rule 609(a), the Court concludes that none of these crimes require proving a dishonest act or false statement. *See* N.Y. Penal Law § 125.25(3)[5]; N.Y. Penal Law § 105.15[6]; N.Y. Penal Law § 115.05[7]; N.Y. Penal Law § 160.15[8];

---

[5] N.Y. Penal Law § 125.25(3) provides as follows:

> A person is guilty of murder in the second degree when[:] Acting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, criminal sexual act in the first degree, sexual abuse in the first degree, aggravated sexual abuse, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants[.]

[6] N.Y. Penal Law § 105.15 provides as follows:

13

N.Y. Penal Law § 265.09[9]; N.Y. Penal Law § 265.03[10]. Moreover, federal case law makes clear

---

> A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.

[7] N.Y. Penal Law § 115.05 provides as follows:

> A person is guilty of criminal facilitation in the second degree when, believing it probable that he is rendering aid to a person who intends to commit a class A felony, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit such class A felony.

[8] N.Y. Penal Law § 160.15 provides as follows:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
> 1. Causes serious physical injury to any person who is not a participant in the crime; or
> 2. Is armed with a deadly weapon; or
> 3. Uses or threatens the immediate use of a dangerous instrument; or
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm[.]

[9] N.Y. Penal Law § 265.09 provides as follows:

> (1) A person is guilty of criminal use of a firearm in the first degree when he commits any class B violent felony offense as defined in paragraph (a) of subdivision one of section 70.02 and he either:
> (a) possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged; or
> (b) displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

[10] N.Y. Penal Law § 265.03 provides as follows:

> A person is guilty of criminal possession of a weapon in the second degree when:

14

that murder, conspiracy, robbery, and weapons possession charges are not the types of crimes contemplated within the scope of Rule 609(a)(2). *See Hayes*, 553 F.2d at 827 (noting that "crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary or petit larceny, do not come within" Rule 609(a)(2)) (internal citations omitted); *DePonceau v. Murray*, No. 9:09-CV-0605, 2013 WL 4039421, *3 (N.D.N.Y. Aug. 7, 2013) ("Plaintiff is correct to the extent he argues that the conviction is not admissible under Fed. R. Evid. 609(a)(2), because establishing the elements of the crime of conspiracy to murder does not require proving – or Plaintiff's admitting – a dishonest act or false statement) (citing N.Y. Penal Law §§ 105.15, 105.05); *Reed-Bey v. Pramstaller*, No. 06-10934, 2013 WL 5954424, *3 (E.D. Mich. Nov. 7, 2013) ("The remaining convictions for murder, felony firearm, and concealed weapons, are not crimes of dishonesty and do not fall within 609(a)(2). Courts have determined that convictions for crimes of force or violence do not fall within Rule 609(a)(2).").

Having concluded that these convictions are not presumptively barred under Rule 609(b), and not presumptively admissible under Rule 609(a)(2), the Court must now undertake the balancing of factors required under Rule 609(a)(1).

As to the first factor, although "Rule 609(a)(1) presumes that all felonies are at least

---

> (1) with intent to use the same unlawfully against another, such person:
> (a) possesses a machine-gun; or
> (b) possesses a loaded firearm; or
> (c) possesses a disguised gun; or
> (2) such person possesses five or more firearms; or
> (3) such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business.

15

somewhat probative of a witness's propensity to testify truthfully," *Estrada*, 430 F.3d at 617, "all Rule 609(a)(1) felonies are not equally probative of credibility," *id.* at 618. Convictions for murder, conspiracy, robbery, and weapons possession are generally not particularly probative as to honesty or veracity. *See id.* at 617-18 (noting that convictions for violent or assaultive crimes generally do not relate to credibility). However, "'crimes requiring planning or preparation bear more strongly on veracity than violence alone suggests because planning indicates deliberate and injurious violations of basic standards rather than impulse or anger, and usually it involves some element of deceiving the victim.'" *Id.* (citation omitted). Moreover, "'theft' crimes, as well as 'crimes that involve evasions of responsibility or abuse of trust,' rank 'high on the scale of probative worth on credibility.'" *Robinson*, 2011 WL 5416324, at *2 (quoting *Estrada*, 430 F.3d at 618). Therefore, the impeachment value of the prior convictions weighs in favor of admitting such evidence.

As to the second factor, it is settled that "the 'probative value of a conviction decreases as its age increases.'" *Twitty v. Ashcroft*, No. 3:04cv410(DFM), 2010 WL 1677757, *2 (D. Conn. Apr. 23, 2010) (quoting 4 Weinstein's Federal Evidence, § 609.05[3][d] at 609-41 (2d ed. 2010)). Since these convictions are undisputably twenty years old, it is clear that this factor significantly diminishes the probative value of Plaintiff's convictions.

"The third criterion, similarity of the crimes, deals with the similarity of the charged crimes, or the incident at issue in the pending case, to the conviction. The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Stephen v. Hanley*, No. 03-CV-6226 (KAM)(LB), 2009 WL 1471180,*5 (E.D.N.Y. May 21, 2009). On the other hand, a conviction for a crime that bears a close resemblance to actions alleged in the current case might cause "unfair prejudice to the party against whom they are offered by suggesting that the party

16

has a propensity to commit such acts." *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993).

Here, Defendants' own arguments militate toward of a finding of unfair prejudice:

> These convictions reveal plaintiff to be an individual with a profound disregard for human life. It follows that if his conscience is not constrained by the sanctity of life when pursuing his own agenda, the concept of truth will provide no impediment. Moreover, underlying precepts of Rule 609 are furthered when considering that plaintiff deliberately participated in murdering the victim for the express purpose of concealing his related criminal activity.

Dkt. No. 82 at 8. Plaintiff argues that "the only plausible effect that plaintiff's twenty-year-old convictions could have would be to urge the jury to disbelieve plaintiff simply because he is a dangerous criminal. [ ] Worse yet, because the fact that the underlying crimes included [sic] second-degree murder and violent felonies [ ], there is the clear danger that the jury may deduce that the underlying convictions illustrate a propensity to commit violence[.]" Dkt. No. 85 at 5. A similar argument was made in *Lewis v. Velez*, 149 F.R.D. 474 (S.D.N.Y. 1993). As in this case, the plaintiff in *Lewis* was an inmate who alleged that the defendant correction officers used excessive force. The plaintiff sought to preclude admission of his prior assault conviction because he feared its admission would result in undue prejudice. The court agreed, finding that

> [g]iven the facts of the current case, assault convictions skirt too close to the impermissible suggestion that the plaintiff had a propensity toward violence and acted in conformity with his aggressive predisposition. Informing the jury that [plaintiff] has been convicted for a prior assault would be unacceptably prejudicial. Thus, while the fact that [plaintiff] is a convicted felon serving a sentence of eleven years to life may be elicited, the charge on which he was convicted may not.

*Lewis*, 149 F.R.D. at 483.

The danger in this case, as in *Lewis*, is that the nature of Plaintiff's convictions might unfairly bias the jury against him. The Court is persuaded that the jury is likely to draw the inference from the nature of Plaintiff's convictions that he has the propensity to engage in violent

17

behavior. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 544 (E.D.N.Y. 2011); *Twitty*, 2010 WL 1677757, at *2. Thus, the danger of unfair prejudice weighs heavily against admitting this evidence.

Finally, it is undisputed that the plaintiff's credibility is a central issue in this case. "[W]here the credibility of a given witness is particularly important because there is little other documentary or supporting evidence and 'success at trial probably hinges entirely on [the witness's] credibility with the jury,' the fourth factor weighs in favor of admission of the prior conviction." *Jean-Laurent*, 840 F. Supp. 2d at 544. Therefore, this factor weighs in favor of admitting the convictions for impeachment purposes pursuant to Rule 609. *See, e.g.*, *id.*; *Robinson*, 2011 WL 5416324, at *2.

In addition to the factors discussed above, the Court must also consider the standard Rule 403 factors: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While most of these considerations are incorporated into the Rule 609(a) factors discussed above, it is worth noting that the factors of undue delay, wasting time, and cumulative evidence militate against admitting evidence of each of Plaintiff's felony convictions and the details thereof. The fact that the Plaintiff is a convicted felon, and that the circumstances underlying the instant matter arose while he was incarcerated, are sufficient to impeach his credibility. A recitation of Plaintiff's criminal history would be cumulative, and thus, unduly prejudicial.

Based on the foregoing considerations, the court finds that the probative value of the fact of Plaintiff's felony convictions outweighs the prejudicial effect of this evidence. "As plaintiff's complaint concerns events that occurred during his incarceration [ ], the jury will be informed that plaintiff has been convicted of a crime by the very nature of the case." *Young v. Calhoun*, No. 85

CIV. 7584, 1995 WL 169020, *4 (S.D.N.Y. Apr. 10, 1995). Admission of the fact of his prior convictions thus will cause minimal added prejudice. However, the probative value of the name, nature, and number of the convictions as well as the date and the sentence imposed is substantially outweighed by the danger of unfair prejudice. Accordingly, evidence as to the fact that Plaintiff is currently incarcerated on the basis of felony convictions is admissible; the names, nature, number dates, and sentences of the convictions are not.[11] *See Giles v. Rhodes*, No. 94 CIV. 6385(CSH), 2000 WL 1510004, *1 (S.D.N.Y. Oct. 10, 2000) ("numerous courts have exercised their discretion to admit evidence of the fact that a witness has been convicted of a felony while barring evidence of the underlying details of the offense"); *see also Brown*, 606 F. Supp. 2d at 312 ("In the Second Circuit, it is within the discretion of the district courts to further limit the evidence of the prior conviction to exclude the nature or statutory name of the offense."); *Livingston v. Lee*, No. 9:04-cv-00607(JKS), 2007 WL 3197517, *1 (N.D.N.Y. Oct. 26, 2007) (in a Section 1983 case brought by prisoner plaintiff, court precluded evidence of "particular crime for which [plaintiff] was convicted or his sentence"); *Clem v. Lomeli*, No. 2:05cv02129 (JKS), 2007 WL 2688842 (E.D. Cal. Sept. 13, 2007) (in excessive force case brought by prisoner plaintiff, evidence limited to the fact that plaintiff was convicted of a felony); *Giles*, 2000 WL 1510004, at *1 (in excessive force case brought by prisoner plaintiff, defendants permitted to

---

[11] Admission of Plaintiff's "remote" convictions that are subject to the Rule 609(b) presumption of inadmissibility requires a greater showing of probative value than those analyzed under Rule 609(a)(1). *Brown*, 2009 WL 728448, *4 ("Although the factors considered in balancing the evidence's probative value against its prejudicial effect are the same as those considered under Rule 609(a),the heightened standard of Rule 609(b) requires that the evidence has a greater probative value than that required under Rule 609(a)."). Pursuant to this ruling, Defendants will be permitted to admit evidence that Plaintiff was convicted of multiple felonies. Thus, introduction of evidence of the "remote" convictions subject to Rule 609(b) would be, by definition, needlessly cumulative. Accordingly, and in light of the heightened showing of probative value required under Rule 609(b), such evidence is admissible to the same extent as the rest of Plaintiff's convictions.

19

cross-examine plaintiff "concerning the fact that he is a convicted felon sentenced to more than one year in prison" but not as to acts and circumstances of his conviction and length of his sentence as that evidence "poses a danger of unfairly prejudicing the jury").

Of course, in the event Plaintiff opens the door on this issue, by attempting to bolster his own credibility or raising the issue of his underlying convictions, Defendants will be permitted to cross-examine him on the relevant details of these convictions.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that, in the event Plaintiff testifies, Defendants may cross-examine him for the purposes of impeaching his credibility by eliciting evidence of the fact that he is currently incarcerated as a result of prior felony convictions; and the Court further

**ORDERS** that the Clerk of the Court shall serve this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 24, 2014
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge